Lewis Gordon and David Gardner for the petitioner may place the court. The first one of you going to argue? Yes, sir. The you can sit at the table. The first point I would like to address, Your Honor, is the Catt claim, which I believe the board is clearly wrong on. For someone to come to office in this circuit, Catt is a separate analytical claim, and the board did not mention Catt in its decision. When there was a motion to remand, the Department of Homeland Security had said in its brief that the Catt motion was late-filed, which is not true according to the regs. There was no final order of removal when that motion to reopen was filed, and the petitioner was not removed. It was granted voluntary departure. So I believe it's very clear that our first point, that the case has to be remanded for Catt, is secure based on the regs and the law in this circuit. The second point that I would like to take up is the balance of the case. Well, those issues remain. Just go back to? The whole thing just goes back? Remain, remain. But I wanted to address that point, which I believe the board is clearly wrong on under the law. The second issue, which is of crucial importance in this case, is your jurisdiction over the one-year rule, over the one-year filing deadline. You have jurisdiction to determine if you have jurisdiction. I understand that there is a statutory bar to jurisdiction when the Attorney General makes a ruling on a one-year deadline. However — That applies to Mr. — I think his name was — what was his name? Gregorian. Gregorian. Yes. Kevin. Yes. However — Karen Gregorian. Karen. However, I believe you also have jurisdiction to look at the constitutional issues involved in reaching that final determination. Just as pursuant to Calau, you have jurisdiction to determine the constitutional issues in discretion. What's the constitutional issue? Well, there's a due process issue because the judge did not allow testimony from the Petitioner on the reason for the filing after the one-year deadline. And at that point in time, the regulation had come out. The final regulation had not been enacted. The judge said reluctantly he's going to find he has no jurisdiction to hear the asylum claim. And the BIA summarily dismisses. So we're put in a situation where there is no interpretation to come out except the judge's reluctant decision. As I say, he did not allow testimony on it. The issue was not brought up to the very end of the hearing when government counsel said he's ineligible. Well, let's try to move this along because we've used up four out of the ten minutes, and I don't think we ought to use up more than half on this issue. One question, though, on the bar. Since the hearing, and I think since the briefs, there's been a decision by this Court which says the bar doesn't apply to the children. Are you familiar with that decision? I'm not offhand, Your Honor, that the bar wouldn't apply to his children. Right. And, yes. Would it apply to his wife because she's derivative here? That's what the I.J. essentially said. Well, the I.J. found that. Why would the bar apply to the wife? Well, she is part of writing in his asylum application. Isn't she entitled to file her own? She would be entitled to file her own asylum. He's saying that the incidents that occurred at the incidents occurred at a time which would have required him to file within one year. But it's not there was no development of case law at all on this at that time, and it's unclear. It's he was making a first-level decision at that point in time, kind of a blanket bar. He did not take a lot of evidence on it, and he didn't look very deeply at it. As I said, it came out at the end. Well, does the one-year bar statute, does it apply to derivative applications? Pursuant to? Is there anything in the statute that says it applies to derivative applications? Okay. Is it written in the statute? Yes. I don't believe so. Is there a regulation that says that it is? I'm not aware of the regulation. So then why does it apply to her? It wouldn't. I would go ahead that it wouldn't apply to her. We have a case that says it doesn't apply to the children. Well, I would accept that position that it wouldn't apply to her. But didn't the wife and the children file within the one year? They filed their own separate asylum claims. Subsequently, yes. Right. But within the one year, right? Yes. So why does it apply to them at all? It wouldn't apply to them at all. But the problem is, at that time, this is one of the very first cases the I.J. had heard on the issue, and he made that finding. However, the lead applicant is the applicant's. But he could have considered each of the claims individually. He just chose to consolidate them. Correct. And having consolidated them, he decided that they were all ton barred. Correct. Correct. And I would like Mr. Gregorian to address that. Let me ask you a question before you come to Mr. Gregorian. I want to ask you a question. Suppose Mr. Gregorian hadn't filed an application. Right. And she files her application, and it's based on time, basically raising the same claims as she is here, sort of predicated on what happened to her husband and her own fear, and her own, because she has some stuff that relates to her. Right. Her own circumstance. You would agree she could move that right through the system? Yes, Your Honor. And point to the circumstances that happened to her? Yes, Your Honor.  Is your co-counsel going to do the merits? Yes. I'm sorry. He had done the hearing. I don't care what he did. I just want to know who's going to argue the – who's now dealt with the procedural course. He's going to argue the – He's going to argue the rest of the case. Yes. Okay. Because now we're down to the merits of the case and whether there's a – you know, whether the decision on the – because the judge went beyond the procedural course. Thank you, Your Honor. I'd just like to quickly address some of the facts, and in particular, in so far as it relates to the – Okay. Well, you have two minutes, but we'll give you maybe an extra two or three, because there's some serious problems on the fact that they ruled against you on the merits. Your Honor, the immigration judge's decision was primarily based on the fact that no physical injury occurred to the – I don't think it was primarily on that basis. It seemed to me it was on the basis that this is not a persecution on the account of political opinion. This is a businessman who wants to get the franchises in a country, and it's a country where the leaders of the country want the franchises for themselves. And they don't want him – they don't want to give them to him, and they want him causing trouble with their plans to keep the businesses to themselves. And so they threatened him about that. And what I understood the judge to say is that's not persecution on account of political opinion. It's business persecution of a rival, even though it's the government doing it. The petitioner's testimony was that he was a trained economist, that he had a Western economy, and that in fact at that time there was a pretext of privatization in Armenia, but in fact it was government-controlled. And therefore he posed a threat because of his beliefs and his approach to business, which was threatening to the government. And therefore the theory of political opinion – But he wasn't trying to reform the system. He was trying to get particular contracts for himself. That's correct, Your Honor. And as a consequence of doing so, threats were made against him and his family. Someone made a phone call to his wife saying we'll cut off his head and kidnap your kids. I wasn't questioning whether there was – the conduct was such that it would be persecution. It's got to be persecution on account of one of five grounds, like race, religion, political opinion. I'm not questioning at this point whether the conduct was such. If they had done these things to him because he is white, or because he's an American, or because he's black, or because he had a particular religion, then it might well be persecution. All I'm talking about now is what I understand the IJ to be saying. And to me the most significant finding was that all of this may well be persecution, but it's not on account of this person's political opinion. It's because the person wanted the contracts and they wanted to keep them for themselves because they were corrupt. If there's shown to be a nexus between the criminal element in society and the government and a person who's trying to exercise his rights in the way we would in a Western society to compete, he poses a threat to the government, his conduct and his beliefs, he forms a social group, whether it's capitalists or persons who believe in capitalists or a free market or a social group of persons who believe in a free market economy in a society which doesn't. And therefore he was a minority in that group and he was in fact threatened because of that and ongoing threats were made against him and his family. So it's either imputed political opinion or a social group comprised of persons who believe in a westernized democracy, economic free enterprise system. Well, I think you could make that kind of an argument if they were persecuting people in general who were opposing their policies, if there were a lot of capitalists running around this country and the government was going after them because they were capitalists. That seems to me somewhat different from going after an individual who's trying to get the same business that the president's wife wants or maybe the secretary of defense or whoever it happens to be. That's good old fashioned capitalistic competition and I may not use nice tactics over there but it's a question of who gets the business and when you're in power in some countries you get the contracts or your friends get the contracts. I understand Yonah's point but I think at the history of Armenia at that time there was a transition and the government had instituted a privatization program and the petitioner's argument was that he was probably one of the few people at that time who were advocating a capitalist position. There weren't a lot of people running around bidding. It was government owned and government controlled and therefore his very presence in bringing in what was a closed bidding society posed itself a threat to the government. That was his argument and that's his fear. That's the theory of the case in the context of what was happening in Armenia and I believe the country conditions do show that corruption was endemic and at this particular point of time continues to be so. Well I think this goes on in a lot of former Soviet Union countries and a lot of Eastern European Soviet bloc countries. In the conversion to capitalism they learned some of our bad habits. The issue Yonah would be in not so much corruption but as to whether the old system of the KGB and the propensity for violence to people who are opposed to that system and that depends on the state. Armenia may be different from some of the other states or from Russia itself and so the country conditions here show that Armenia was particularly there was an inextricable link between what was got in their way was either killed or tortured or kidnapped or subject to random violence. So in that context this becomes a much more serious issue than someone just losing out on a business. So your basic argument is imputed political opinion. Imputed political opinion and also mixed motive. Finally to join what my co-counsel has argued that if assuming Yonah's did not find that there was a particular group the convention against torture becomes that much more significant because that's an independent form of relief. We're not necessarily looking at persecution and it should be independently And what's the torture? Are you saying there was past torture or it's a fear of future torture? There's a fear of future torture acquiescence by the government. The link between the government and criminal elements and based on the facts here the series of threats and the seriousness of the threats that the court at that time did not have enabling regulations to address convention against torture it would have been a different case. There's a different standard and therefore the case should in fact be remanded to evaluate this evidence or new evidence based on the criteria under the torture convention which was not done. There's no record of that because the statute wasn't in effect at the time of the trial. Thank you. Still in the morning. So good morning your honors. My name again for the record is Margaret Newell. I'm here from the Department of Justice on behalf of the respondent in this case. Your honor, just to quickly touch on the asylum claim before we get into the persecution of this case. This court has found and the statute clearly states that the court has no jurisdiction to review any decision of the agency under 8 U.S.C. 1158A2. The immigration judge's opinion which is the opinion being reviewed by this court is very clearly making a decision, it states specifically that it's making a decision under that 1158A2 and therefore this court does not have jurisdiction to determine any of the asylum. Well, I think Mr. Gordon's argument was a little bit different. He said I was, my client was not allowed to testify on the reasons and that was the denial of his constitutional right, you know, to tell this story. With respect to that, your honor. Wouldn't that be a subject to our? I do not believe that that argument is supported by the record and I also believe that there's no prejudice which would be required for a reversal. If you look at page 333 of the record, Petitioner's counsel after the close of testimony said he would like an additional opportunity to present testimony. Initially they just admitted testimony about that. They were not refused to present testimony in an initial presentation of Petitioner's testimony. He then asked to begin again to present additional testimony. The judge asked if the counsel had testimony that was different than the reasons proffered in the asylum application and informed the counsel that the court could decide taking into account the explanations in the asylum application and at that point the Petitioner's counsel did not approve taking additional testimony to acquiesce in that and did not press his request further. So I believe it's not supported by the record. At any rate, the Petitioner is not, has never come to the court or the board to say that Petitioner would have proper testimony that would be different than the asylum application, which was considered by the court in making this decision. So I don't believe there's been any prejudice. Does his untimely petition have any effect on the wife and children? Yes, Your Honor. The judge found that because the families' asylum applications were prerogative of that, depended on that. Well, we just had, the court just issued an opinion in the case of Al-Hemry, Al-Hemry v. Ashcroft, where we said that wouldn't affect the children's application. Well, Your Honor, I think that's true. She filed an application. She filed a timely application in her own right, right? This Court, unfortunately, does not have jurisdiction to overturn that decision under this judgment. Well, let me clear this. She appealed the denial of asylum, correct, to the BIA? She did. Al-Hemry appealed the denial of asylum to the BIA, correct? I believe that's true, Your Honor. They all petitioned the denial by the BIA to us. That's correct. We need to ask. I mean, you know, we don't have jurisdiction to review the asylum determination. That's correct. And the asylum. So we need to look. Does the statute, the one-year statute, does that apply in this situation to the mother and to the children? We already said in Al-Hemry that it doesn't apply to the children. So my question to you is why does that statute apply to the mother? Well, the. Who filed the timely application. The immigration judge decided that it applied, and that's in any decision they are, any decision that pertains to the statute. What is in the statute, then, that leads you to say that the IJ's decision was correct on that point? The statute does not specifically address derivative applications, but. Is there a regulation? Not specifically to this point, to my knowledge, Your Honor. But. But you're saying no matter how incorrect it is, there's no jurisdiction to review it. I know that's not an easy thing to state. We're quite used to jurisdictional problems. Yes, Your Honor. I just want to get the issue clear, that's all. That's correct. And you say no matter how wrong, even if the child had an absolute right to do it and even if the law is that you can't bar him, that if the immigration judge was wrong, there's nothing we could do about it. That's what Congress decided, and that's what this Court has acknowledged in the Hakeem and Molina's fraud cases. Yes. Well, we have jurisdiction to determine our jurisdiction, don't we? I don't believe that it's a question of whether the Court has jurisdiction. I mean, if you look at the Court's. Well, what you're saying is that what you're saying, though, clearly with respect to the male, is that his application was untimely. Therefore, you have no jurisdiction to consider his asylum application. And you're saying to us that because she filed the derivative application, that same one-year time bar applies to her, and therefore, Ninth Circuit, you have no jurisdiction to consider her derivative application. And I asked you, and you gave me your response, that, well, the I.J. said this, and, you know, there's a statute, but I don't see anything in the statute. I asked you if there's a regulation. There's no regulation. We said in it we said with respect to minors just recently in a case called El-Henry that that bar doesn't apply to minors. So I don't know if it, you know. Well, Your Honor, I guess my – just to clarify our position, it's that as long as the immigration judge, the agency's decision is clearly making a decision pursuant to that statute. And by that, I mean it's the same. He didn't cite the statute. He just said she was untimely. No, I'm sorry. He did cite the statute. Well, I don't want to – I don't want to take away your time from your merits. Thank you, Your Honor. We can both look at the record later. If you are looking at the brief and you quote the statute, it says, No court shall have jurisdiction to review any determination of the attorney general under Paragraph 2. That's correct. But I can't – I don't care what Paragraph 2 says. What does Paragraph 2 say? Paragraph 2, there's to be states – I actually am paraphrasing right now. The alien – an alien is not statutorily eligible to apply for asylum unless he files his application within one year after he arrives into the United States. The regulations clarify that that means the latest arrival in the United States rather than previous entries. So that would be May 1997 for the lead petitioner. 1158A2D addresses when an untimely filing could be excused by exceptional circumstances or changed circumstances. I would like to proceed to the merits and honors. First of all, I will point out that the social group argument that was discussed today, that argument was not raised before the agency, and so, therefore, there's no statute of remedies on that. So I don't believe that's before the Court today yet. To move on to the political opinion, the immigration judge did find that the petitioner failed to meet his burden to prove persecution on account of political opinion and also found that – Well, the argument of your opposing counsel is that they were – they viewed him as somebody advancing an opposing philosophy. He was a market capitalist or a free market proponent, and he was trying to bring the free market economy to this nation. And that's why they were persecuting him. That's true, Your Honor. First, I would like to point out for the Court the burdens that this petitioner has in – first in obtaining relief from the immigration judge and also then in review before this Court under the withholding relief. This petitioner would have to prove that there was a clear probability of future persecution, which means more likely than not. Let's not go into the standards. Okay. Because you don't have much time. All right. Just tell me the answer to the question, the answer to the argument. Your Honor, the answer is that, as pointed out by the judge, there's no indication in any of these – in the petitioner's testimony about any of these incidents that these alleged persecutors were motivated by any – by his alleged support of a free market system. They were merely – and petitioner admitted in connection to one incident that they were motivated by grief. And the record supports the reasonable finding that these officials or their associates threatened petitioner and harassed him because they just wanted to get these business opportunities for themselves, not on account of any disagreement with his political opinions or to punish him or otherwise affect him because he held some sort of political opinion. They weren't trying to change his political opinion. They weren't trying to make him stop – stop bringing up a political opinion. They were trying to just dissuade him from participating in bids. I contrast this with the – There was some sort of policy of opening up a private-run business – I mean government-run business. Privatization. Yes, Your Honor. That's true. In that period of time – There was a governmental policy at play. Right. The governmental policy was to open these types of businesses up to public bid. These individuals who happened to allegedly have influence in that government, whether it's related to their influence in the government or not, wanted to be in on the action and for that reason threatened petitioner. And it's interesting as well that when he did – when he stopped pursuing those bids, the threats specific to those bids ceased. The only threats that he complains of after certain businesses were awarded to his business rivals related to different businesses, which I – which it appears were then up for bid at that time. So in each case, he was merely threatened to dissuade him from taking advantage of a business opportunity. So the courts or the immigration judges finding that there's no indication of a motivation related to a political opinion is upheld by the record. I'd also point out that the immigration judge's opinion that the threats and harassment that petitioner complains of did not rise to the level of persecution is supported by substantial evidence. It appears that these incidents that he describes were more like personal disputes, maybe personal or business disputes, like in a Zayas Marini case in this jurisdiction, or criminal – merely criminal bribes as in the Bolshevik case. All right. That, Counselor, we're running well over again. Thank you. Thank you, Your Honor. I guess I would like to, if you wouldn't mind, address the Convention Against Torture issue. All right. We'll give you a minute for that. The Respondent does not take the position that the Convention Against Torture – Does not what? Does not take the position at this time that the Convention Against Torture reopening would be untimely, not for the reasons stated by the petitioner, but because there was no final order at that time. It was being appealed. But the petition for remand was denied under the broad discretion of the judge validly because the petitioner had not stated a pre-manifest case for relief under the Convention Against Torture, where the court had found there wasn't even a well-founded fear of persecution or treatment that would rise to the level of persecution. Certainly, there was no indication that there would be torture. And the petitioner in this case is relying on the same testimony that supported his withholding of removal claims. Aside from one article, new evidence that related to conditions in Russia which are not material to this case. So for those reasons and reasons stated in our brief, unless you have any questions, we ask the Court to deny them. Thank you, counsel. The case just argued will be submitted. The final case for oral argument is Davtyan v. Ashcroft.
judges: Reinhardt, Wardlaw, Paez